02-11-119-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00119-CV

 

 


 
 
 Darren Bradley Swain
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Corporal Jason Hutson, Officer Dora Dewall,
 Sergeant Daniel Henning, Court Clerk Norma Williams, Judge Stewart Milner,
 Judge Rosalia Maddock, and Does 1–5
 
 
  
 
 
 APPELLEES
 
 


 

 

----------

 

FROM THE 48th
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

I. 
Introduction

In
three points, pro se Appellant Darren Bradley Swain appeals from the trial
court’s grant of motions to dismiss for want of jurisdiction filed by Appellees
Arlington Municipal Court Judges Stewart Milner and Rosalia Maddock and
Arlington Municipal Court Clerk Norma Williams (the judicial employees); Arlington
Police Corporal Jason Hutson, Officer Dora DeWall,[2]
Sergeant Daniel Henning, and City of Arlington employees John Does 1–5 (the
other employees).  We affirm.

II. 
Factual and Procedural Background

This
is the second time that Swain appeals the trial court’s dismissal of his claims
in this case for want of jurisdiction.  See Swain v. Hutson (Swain I),
No. 02-09-00038-CV, 2009 WL 3246750 (Tex. App.—Fort Worth Oct. 8, 2009, pet.
denied) (mem. op.).

A.  Factual
Background in Swain I

As
set out in our first opinion, Swain alleged that on August 30, 2006, he and two
women parked his rental car in the parking lot of a vacant Arlington restaurant
after one of the women spilled a soft drink in the car.  Id. at *1.  While
all three individuals stood outside the car, Officer DeWall arrived to
investigate, and Corporal Hutson arrived later to assist her.  Id. 
Corporal Hutson knew the two women with Swain, and Swain alleged that, at some
point, Corporal Hutson threw him against the rental car and searched him.  Id.

When
Corporal Hutson found in Swain’s pockets sealed samples of Protonix and
Levitra, which Swain’s physician had given him, the officers arrested him for
possession of dangerous drugs and also cited him for offering to buy or sell
goods or services on city property.  Id.  Swain was released on bail later
that evening, but his drug samples and a number of cell phone “SIM” cards were
not returned to him.  Id.  Over the next few months, Swain attempted on
several occasions to reclaim his drug samples and SIM cards and to obtain
copies of the charges, police reports, and other documents and information
related to his arrest from city officials, with only limited success.  Id. 
Swain received an additional citation in the mail on January 3, 2007, charging
him with itinerant vending without a license based on the August 30, 2006
events.  Id.

On
February 1, 2007, Judge Milner presided over Swain’s trial on the charge of
offering to buy or sell goods or services on city property, found him guilty,
and assessed a fine and costs totaling $173.  Id.  The possession of
dangerous drugs charge was dismissed.  Id.  On March 2, 2007, Swain
tried to pay his appeal bond for the February 1 conviction.  Id.  He
alleged that municipal court clerk Williams initially refused to accept payment
but eventually accepted a certified check and that a Tarrant County criminal
court later dismissed the appeal because the appeal bond was filed too late.  Id.

Swain
filed a motion to dismiss the itinerant vending charge on May 2, 2008, alleging
that he had been denied his right to a speedy trial.  Id. at *2.  On
July 17, 2008, a jury in Judge Maddock’s court found Swain guilty.  Id.

Swain
filed a civil suit against everyone he believed was responsible for his
perceived injustices, alleging state law torts and violations of his federal
constitutional rights.  Id.  The City of Arlington filed a motion to
dismiss under section 101.106(e) of the civil practice and remedies code, which
did not address Swain’s federal claims, and the trial court granted the motion.[3] 
Id. at *3.  We affirmed the dismissal of Swain’s state law claims but
reversed and remanded his federal law claims to the trial court.  Id. at
*6.

B.  Judicial
Employees’ Motion to Dismiss

After
our mandate issued in Swain I, the judicial employees—Judges Milner and
Maddock and municipal court clerk Williams—filed a motion to dismiss Swain’s
suit for lack of jurisdiction based on judicial immunity and governmental
immunity.  In support of their motion, they attached Exhibit A, thirty-six
pages of business records from the municipal court pertaining to Swain’s
conviction for offering to sell goods or services on city property; Exhibit B,
seventy-eight pages of business records from the municipal court pertaining to
Swain’s conviction for itinerant vending without a license; and Exhibit C, Williams’s
affidavit.

Exhibit
A included a case history report that listed all of the recorded events and filings
for Swain’s case in Judge Milner’s court.  This exhibit also showed that
Officer DeWall issued Swain a citation on August 30, 2006, for offering to sell
goods or services on city property[4] and that Swain pleaded
not guilty, was found guilty, and received a $111 fine plus costs (for a total
of $173) on February 1, 2007.  It further showed that on February 23, 2007,
Swain was informed of the amount due for his appeal bond and for the reporter’s
record, that he said he would mail checks for these items, and that a check was
received from Swain for the appeal bond amount on March 2, 2007.

Exhibit
B included a case history report that listed all of the recorded events and filings
in Swain’s itinerant vending case.  This exhibit also showed that Officer
DeWall issued Swain a citation on January 2, 2007, for itinerant vending
without a license[5] for his activities on
August 30, 2006; that Swain filed a motion for continuance on August 3, 2007;
that on May 2, 2008, and July 15, 2008, he moved to dismiss the case for
violating his right to a speedy trial, which the municipal court denied as
moot; that a jury found him guilty on July 17, 2008; and that the municipal
court assessed a $488 fine plus costs (for a total of $550).

In Exhibit
C, Williams described her interactions with Swain:  She gave him an “Appeal
Information” form after he was found guilty of offering to sell goods or
services on city property on February 1, 2007; she recorded his motion for new
trial on February 13, 2007, which the municipal court denied on February 15,
2007; and she recorded that Swain dropped off a “Notice of Appeal” on February
23, 2007.  Williams also stated that on March 2, 2007, Swain appeared at the
cashier window in the municipal courthouse and presented a check for $346, made
payable to Tarrant County, with no appeal bond or additional paperwork attached;
she accepted the check and recorded a copy of it; Swain continued to request
additional information; and she and another clerk told him that they could not
give him legal advice and referred him to his “Appeal Information” form.  After
they asked Swain to leave and he refused, Williams asked a nearby warrant
officer for assistance, and then Swain left.

C.  Swain’s
Post-Remand Petition

Swain
did not file a response to the judicial employees’ motion, but he filed a
verified amended petition not long afterward, adding Does 1–5 as defendants and
adding the following factual allegations:  (1) Corporal Hutson knew the two
women with Swain because he had been previously involved in litigation with
them; (2) Neither of the two drugs that Corporal Hutson found on Swain produce
any symptoms of intoxication, depriving Corporal Hutson of probable cause to
suspect that Swain was under the influence of any substance or to search him;
(3) Corporal Hutson arrested Swain at around 6:00 p.m. and did not read to him
his Miranda rights before several police officers searched his rental
car for an hour and a half while he waited in Corporal Hutson’s vehicle to be
transported to jail; (4) Corporal Hutson refused his request to be taken before
a magistrate judge; and (5) Corporal Hutson stranded the two women in the
vacant parking lot, demonstrating the retaliatory nature of Corporal Hutson’s
actions for the women’s previous litigation against him.  In his amended
petition, Swain renewed his complaints that during the first three hours of his
arrest and incarceration he was denied access to a phone and that he was
released at 1:20 a.m., after posting bond, approximately six hours after being
taken into custody.

During
the hearing on the judicial employees’ motion, Swain offered nine
exhibits—appraisal information for a piece of City of Arlington commercial
property; a letter from Swain’s physician explaining the drug samples; a
prescription for the drugs; a questionnaire with a judge’s handwritten answers;
an arrest warrant affidavit template ; the judgment for Swain’s conviction for
offering to sell goods or services on city property; the State’s motion to
dismiss one of the charges; Swain’s check for $346 made payable to Tarrant
County; and the possession of dangerous drugs charging instrument.  The trial
court granted the judicial employees’ motion on November 15, 2010.

D.  Other
Employees’ Motion to Dismiss

The
other employees, Does 1–5 and the police officers—Corporal Hutson, Officer
DeWall, and Sergeant Henning—filed a motion to dismiss for lack of jurisdiction
based on governmental immunity and qualified immunity.  To their motion, they
attached Corporal Hutson’s affidavit as Exhibit A, Officer DeWall’s affidavit
as Exhibit B, twenty-six pages of administrative business records from the
Arlington police department as Exhibit C, and our opinion in Swain v. State
(Swain II), 319 S.W.3d 878 (Tex. App.—Fort Worth 2010, no pet.) (mem. op.),
in which Swain appealed his conviction for itinerant vending without a license,
as Exhibit D.

In
his affidavit, Corporal Hutson stated that he spotted Officer DeWall conducting
an investigation in an area he was patrolling.  He recognized the two women
with Swain as subjects he had “dealt with on numerous occasions” when he worked
on the east side of Arlington “in reference to drugs, narcotics, stolen
vehicles, and other such crimes.”  Corporal Hutson stated that he spoke with
Officer DeWall about what she had found during her investigation and that she said
that the subjects had multiple cell phones in the rear of the vehicle and were
attempting to sell them on the public sidewalk with a tent set up.

Corporal
Hutson noticed multiple bulges in Swain’s pockets and advised Swain that he was
going to pat him down for weapons.  He asked Swain for a business card, and
when Swain pulled items from his left pocket, Corporal Hutson noticed two
blister packs containing what he believed to be prescription pills.  Swain told
him that he did not have a prescription for the pills with him.  Corporal
Hutson identified the drugs—Protonix and Levitra—as dangerous drugs.  Officer
DeWall placed Swain in handcuffs because he did not have a prescription for the
drugs.  Corporal Hutson stated that he did not use any force on Swain.

In
her affidavit, Officer DeWall stated that at approximately 4:59 p.m. on August
30, 2006, she was on a routine patrol when she saw Swain and two women setting
up a tent with a sign for “Sprint,” a phone company, and that it appeared to
her that they were trying to sell items to people driving down the street.  The
tent was on the other side of the sidewalk from a vacant restaurant parking
lot, “in the grassy area, which is city property.”  She pulled into the parking
lot and approached them.  Swain had the trunk of the car open, and it appeared
that he was selling items—cell phones and accessories—out of his trunk.  Swain
told her he was selling items, but because he seemed evasive in his answers,
she asked to see his identification.  Officer DeWall explained to Swain and the
two women that they could not sell from the roadway on city property.  Officer
DeWall issued a citation to Swain for offering to sell goods and services on city
property, and Corporal Hutson told Swain that he was under arrest for
possession of a dangerous drug.  Officer DeWall stated that she did not see any
officer use force on Swain at any time during the encounter.

The
administrative records in Exhibit C contained, among other items, Swain’s
arrest report for possession of the Protonix and Levitra and the incident
reports by Corporal Hutson, Officer DeWall, and Officer McLeod, another officer
that attended the scene.  Exhibit C also contained the booking/record form,
which reflected a notation that Swain refused to sign it.  The form contained a
statement that the person being booked had been given the opportunity to make
one free phone call within the local dialing area, or at his own expense if
outside the local dialing area, and that there were phones located in the
dayroom area and holding cells.  Swain did not initial his acknowledgement of
this statement.

Exhibit
D reflected that we dismissed Swain’s appeal of his itinerant vending without a
license conviction for want of jurisdiction because his notice of appeal to
this court was untimely.  See Swain II, 319 S.W.3d at 879–80 (noting
that Swain failed to file his notice of appeal within thirty days of the county
criminal court’s judgment).

E. 
Swain’s Response to the Other Employees’ Motion

Swain
attached an affidavit to his response to the other employees’ motion in which
he restated many of the same allegations in his amended petition.  Swain did
not offer any evidence at the hearing on this motion.  The trial court granted
the other employees’ motion on February 5, 2011.

F. 
Procedural History

In
addition to granting both motions, the trial court denied Swain’s requests for
findings of fact and conclusions of law.  This appeal followed.

III.  Immunity

In
his first two points, Swain complains that the trial court erred by concluding
that the judicial employees and the other employees have immunity under 42
U.S.C. § 1983 and by dismissing his section 1983 claims against them.

A. 
Standard of Review

We
review the trial court’s grant of a plea to the jurisdiction de novo.  Tex.
Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 228 (Tex. 2004). 
If the pleadings affirmatively negate the existence of jurisdiction, then they
are incurably defective, and the trial court may grant the plea to the
jurisdiction without giving the plaintiff an opportunity to amend.  Id.
at 226–27.  However, a trial court is not required to look solely to the pleadings;
it may consider evidence and must do so when necessary to resolve the
jurisdictional issues.  Id. at 227; Wise Reg’l Health Sys. v.
Brittain, 268 S.W.3d 799, 804 (Tex. App.—Fort Worth 2008, no pet.).  In
such cases, the defendant has the initial burden to support the plea to the
jurisdiction with evidence.  City of Dallas v. Heard, 252 S.W.3d 98, 102
(Tex. App.—Dallas 2008, pet. denied); see Miranda, 133 S.W.3d at 228
(stating that this standard generally mirrors the traditional summary judgment
standard).  If the defendant does so, the plaintiff must raise a jurisdictional
fact issue to survive the plea.  Heard, 252 S.W.3d at 102; see Miranda,
133 S.W.3d at 228.  But if the evidence is undisputed or fails to raise a jurisdictional
fact issue, then the trial court rules on the plea as a matter of law.  Miranda,
133 S.W.3d at 228; Heard, 252 S.W.3d at 102.

B.  42 U.S.C. § 1983

Section
1983 provides a civil cause of action for the deprivation of an individual’s
federal statutory or constitutional rights:

Every person who,
under color of any statute, ordinance, regulation, custom, or usage, of any
State . . . , subjects, or causes to be subjected, any
citizen of the United States . . . to the deprivation of
any rights, privileges, or immunities secured by the Constitution and laws,
shall be liable to the party injured in an action at
law . . . .

42 U.S.C.A. § 1983 (West
2003).

A
claimant can bring a section 1983 action against a public official in his personal
or official capacity.  Kentucky v. Graham, 473 U.S. 159, 165, 105 S. Ct.
3099, 3105 (1985).  Personal-capacity suits “seek to impose personal
liability upon a government official for actions he takes under color of state
law.”  Id. at 165, 105 S. Ct. at 3105.  Official-capacity suits, in
contrast, are treated as suits against the entity of which the officer is an
agent.  Id. at 165–66, 105 S. Ct. at 3105; Meadowbriar Home for
Children, Inc. v. Gunn, 81 F.3d 521, 532–33 (5th Cir. 1996)
(recognizing that cities qualify as persons subject to suit under section
1983).  If a section 1983 suit is brought against an entity, such as a city, the
plaintiff must show that the entity’s policy or custom was the moving force
behind the constitutional violation.  Graham, 473 U.S. at 166, 105 S.
Ct. at 3105; Monell v. Dep’t of Soc. Servs., 436 U.S. 658, 691, 98 S.
Ct. 2018, 2036 (1978) (recognizing that this requirement prevents a
municipality from being held liable on a section 1983 claim on a respondeat
superior theory).

Under
the doctrine of absolute immunity, judges are immune from section 1983 suits for
their judicial acts unless they act in “clear absence of all jurisdiction.”  Stump
v. Sparkman, 435 U.S. 349, 355–57, 98 S. Ct. 1099, 1104–05 (1978).  Whether
an act is a judicial act relates to the nature of the act itself—“whether it is
a function normally performed by a judge”—and the expectations of the parties—“whether
they dealt with the judge in his judicial capacity.”  Mireles v. Waco,
502 U.S. 9, 12, 112 S. Ct. 286, 288 (1991) (per curiam).

The
doctrine of qualified immunity shields an official performing discretionary
functions from liability for civil damages under section 1983, provided that the
official’s conduct does not violate clearly established constitutional or
statutory rights of which a reasonable person would have been aware.  Babb
v. Dorman, 33 F.3d 472, 477 (5th Cir. 1994) (recognizing that this is
“immunity from suit, not simply immunity from liability”); Leachman v.
Dretke, 261 S.W.3d 297, 312 (Tex. App.—Fort Worth 2008, no pet.) (op. on
reh’g).  Once a government official who is sued in his personal capacity raises
qualified immunity, the burden shifts to the plaintiff to rebut this by showing,
in pertinent part, that he has alleged a violation of a constitutional right.  Waltman
v. Payne, 535 F.3d 342, 346 (5th Cir. 2008).

C.  Analysis

1. 
Judicial Employees

In
his first point, Swain argues that the trial court erred by determining that it
lacked jurisdiction over the judicial employees and by dismissing his section
1983 claims against them.

a.  Official Capacity

Swain
complained in his petition that Williams violated his due process rights in her
personal capacity[6] and in her official
capacity by refusing to timely accept his appeal bond due to the City’s policy
or its failure to train its employees.  The judicial employees argued in their
motion to dismiss that Swain failed to allege facts sufficient to state an
official-capacity claim under section 1983 and that, therefore, this claim was
a mere tort claim barred by governmental immunity.[7] 
See Harris Cnty. v. Sykes, 136 S.W.3d 635, 638 (Tex. 2004) (stating that
governmental immunity defeats subject matter jurisdiction over a tort claim
against a subdivision of the state unless the subdivision expressly consents to
suit); Karnes Cnty. v. Thomas, No. 04-06-00613-CV, 2007 WL 2261694, at
*6 (Tex. App.—San Antonio Aug. 8, 2007, no pet.) (mem. op.) (involving a
similar relationship between governmental immunity and failure to state a claim
under section 1983).

Because
Swain’s official-capacity suit against Williams is essentially a claim against
the City, we consider whether Swain properly alleged in his petition a
violation of a federal right resulting from the City’s policy.  See Graham,
473 U.S. at 165–66, 105 S. Ct. at 3105; Pineda v. City of Houston, 291
F.3d 325, 331 (5th Cir. 2002) (recognizing that failure to train employees can
constitute a policy for which a city may be liable under section 1983), cert.
denied, 537 U.S. 1110 (2003).  Swain never alleged that Williams failed to
accept the appeal bond on the first day that Swain offered it to her.  Instead,
he merely alleged that he tendered the check on March 2, 2007, that Williams
initially refused it but later accepted it, that she file-stamped it to show
timely payment, that his appeal was dismissed because the appeal bond was filed
too late, and that this demonstrated the existence of an unconstitutional City
policy or the City’s failure to train its employees.  Indeed, the stamp on the
copy of the check that Swain submitted at the judicial employees’ hearing
indicates that it was accepted on March 2, 2007, and Williams’s affidavit
reflects the same.  Therefore, Swain did not allege a violation of a federal
right, constitutional or otherwise.  See Graham, 473 U.S. at 166, 105 S.
Ct. at 3105.

While
courts generally give plaintiffs an opportunity to amend insufficient but
curable pleadings such as these, a plaintiff can waive this by inaction.  See
Haddix v. Am. Zurich Ins. Co., 253 S.W.3d 339, 347 (Tex. App.—Eastland
2008, no pet.) (citing Kassen v. Hatley, 887 S.W.2d 4, 13–14 n.10 (Tex.
1994)).  Here, Swain waived his opportunity to cure the deficiency in his
pleadings when he failed to request permission to amend his petition as to
these claims after the trial court granted the judicial employees’ plea to the
jurisdiction.  See Tex. A & M Univ. Sys. v. Koseoglu, 233 S.W.3d
835, 839–40 (Tex. 2007) (deciding that the opportunity to amend arises after a
court finds the plea meritorious); Tara Partners, Ltd. v. City of S. Houston,
282 S.W.3d 564, 578 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (“By
failing to seek permission to amend after the trial court found the City’s plea
meritorious, appellants forfeited the opportunity to
amend . . . .”).  Therefore, because Swain failed to allege
a violation of the only federal right that he raised in his official-capacity
claim, the City was entitled to governmental immunity, see Sykes,
136 S.W.3d at 638, and we overrule this portion of Swain’s first point.

b.  Personal Capacity

Swain
complained in his petition that the judges violated his due process rights by
denying his motions for a new trial and also violated his right to a speedy
trial.  Further, he generally alleged that judges violated his due process
rights by trying to force him to get an attorney.

The
case history reports that the judicial employees included in Exhibits A and B established
that the judges made their rulings in response to motions that Swain filed with
the court, which showed that Swain’s expectation was to deal with each judge in
his or her judicial capacity to obtain favorable rulings.  See Mireles,
502 U.S. at 12, 112 S. Ct. at 288.  Additionally, rulings on motions for new
trial and motions to dismiss for failure to provide a speedy trial are functions
normally performed by a judge.  Tex. Code Crim. Proc. Ann. arts. 28.061, 40.001
(West 2006); Mireles, 502 U.S. at 12, 112 S. Ct. at 288.  Therefore,
these judges’ rulings were judicial acts that were entitled to absolute
immunity from Swain’s section 1983 suit.  See Stump, 435 U.S. at 355–57,
98 S. Ct. at 1104–05.  Accordingly, we overrule this portion of Swain’s first
point against the judicial employees in their personal capacities.

Turning
to the assertion that judges tried to force Swain to obtain an attorney, the
judicial employees’ case history reports listed every filing and recorded event
in both cases, and the only evidence relating to this claim showed that Swain acknowledged
and waived his right to an attorney on his trial request form.  Because Swain
took action to submit a written request such as this, we can only conclude that
he expected to deal with the judge in his or her judicial capacity.  See
Mireles, 502 U.S. at 12, 112 S. Ct. at 288.  Further, by including notification
of Swain’s right to representation on this request form, the judge was performing
a function normally performed by a judge prior to a defendant’s voluntary and
intelligent waiver of this right.  See Tex. Code Crim. Proc. Ann. art.
1.051(f), (g) (West Supp. 2011); Mireles, 502 U.S. at 12, 112 S. Ct. at
288.  In the exhibits that Swain submitted before the hearing on the judicial
employees’ motion to dismiss, he did not include evidence that any judge tried to
force him to obtain an attorney; thus, he failed to raise a jurisdictional fact
issue to overcome the judicial employees’ plea.  See Miranda, 133 S.W.3d
at 228; Heard, 252 S.W.3d at 102.  Therefore, the judicial employees
were entitled to judicial immunity against this claim.  See Stump, 435
U.S. at 355–57, 98 S. Ct. at 1104–05.  Accordingly, we overrule this portion of
Swain’s first point against the judicial employees in their personal capacities.

In
sum, because the City was entitled to governmental immunity against Swain’s
official-capacity claim and the judicial employees were entitled to judicial
immunity against his personal-capacity claims, we overrule Swain’s first
point.  See Waltman, 535 F.3d at 346; Miranda, 133 S.W.3d at 228.

2.  Other
Employees

In
his second point, Swain argues that the trial court erred by determining that
it lacked jurisdiction over the other employees and by dismissing his section
1983 claims against them.

a.  Official
Capacity

In
their motion to dismiss, the other employees argued that Swain failed to allege
facts sufficient to state a claim under section 1983 and that, therefore, his
claims were mere tort claims barred by governmental immunity.  See Sykes,
136 S.W.3d at 638; Karnes Cnty., 2007 WL 2261694, at *6.  Because Swain’s
official-capacity suit against the other employees is essentially a claim
against the City, we consider whether Swain’s petition properly alleged
constitutional violations resulting from a policy or custom of the City.  See
Graham, 473 U.S. at 165–66, 105 S. Ct. at 3105.

In
his petition, Swain alleged malicious prosecution[8]
for his initial arrest and for the “continued processing” of the charge.  However,
malicious prosecution, standing alone, is not a recognized ground for a section
1983 claim.  Rogers v. Owings, No. 09-10-00587-CV, 2011 WL 1842756, at
*10 (Tex. App.—Beaumont May 12, 2011, no pet.) (mem. op.) (citing Castellano
v. Fragozo, 352 F.3d 939, 942 (5th Cir. 2003) (“We decide that ‘malicious
prosecution’ standing alone is no violation of the United States Constitution,
and [that] to proceed under 42 U.S.C. § 1983 such a claim must rest upon a
denial of rights secured under federal and not state law.”)).  Within his
malicious prosecution argument, however, Swain generally alleged that the police
officers lacked probable cause to believe that his prescription drugs were
dangerous drugs.  Swain pleaded that “Hutson knew, or should have known, that
police do not arrest individuals for possession of physician samples under any
but the most extreme circumstances” and that the “true basis of Swain’s arrest
was Hutson’s motive to punish Swain for his association with [the two women in
the car].”

Essentially,
Swain alleged that the City was liable for a police officer’s actions that were
motivated, not by a desire to comply with the City’s policy or custom, but by an
association that the officer individually had with the parties involved.  Because
a municipality cannot be held liable under section 1983 on a respondeat
superior theory, this allegation affirmatively negated the existence of
jurisdiction, and the trial court properly dismissed this portion of Swain’s
claim.  See Monell, 436 U.S. at 691, 98 S. Ct. at 2036 (emphasizing the
importance of distinguishing between individual violations perpetrated by local
government employees and those that can be fairly identified as actions of the
government itself); Miranda, 133 S.W.3d at 226–27.

Swain
also claimed, in the alternative, that the City’s failure to train personnel
caused Corporal Hutson’s conduct, but he failed to allege or make any reference
to deliberate indifference, an essential element of failure-to-train claims
brought under section 1983.  See Pineda, 291 F.3d at 331–32.  Moreover,
Swain waived his opportunity to cure this deficiency when he failed to amend his
petition after the trial court granted the other employees’ plea to the
jurisdiction.  See Koseoglu, 233 S.W.3d at 839–40; Tara Partners,
282 S.W.3d at 578.  Because Swain failed to properly allege a section 1983
claim, the City was entitled to governmental immunity, see Sykes,
136 S.W.3d at 638, and we overrule this portion of Swain’s second point.

b.  Personal
Capacity

Swain
brought claims against the other employees in their personal capacities
alleging (1) assault and battery, (2) false arrest, (3) malicious prosecution,
(4) false imprisonment, (5) denial of due process, (6) an ex post facto
prosecution, and (7) fraud on the court.[9]

While
Swain did not formally present evidence at the hearing to rebut the other
employees’ evidence, he attached an affidavit to his response to the plea, so we
turn next to whether that evidence created a fact issue regarding any alleged constitutional
violations.  See Waltman, 535 F.3d at 346; Miranda, 133 S.W.3d at
231 (considering an affidavit attached to the plea to the jurisdiction as
evidence); see also San Antonio Hous. Auth. Found., Inc. v. Smith, No.
04-10-00759-CV, 2011 WL 3627699, at *5 (Tex. App.—San Antonio Aug. 17, 2011, no
pet.) (mem. op.) (considering evidence attached to the plaintiff’s response to determine
if it raised a fact issue).

i. 
Assault and Battery

Swain
alleged in his petition that Corporal Hutson committed assault and battery on him
in the course of his arrest and that Officer DeWall did not intervene.  Even if
we interpret this as a section 1983 excessive force claim, Swain failed to
present any evidence of an injury, an essential element of such a claim, to
rebut the other employees’ evidence that Corporal Hutson did not use force on
Swain, let alone injure him.  See Bush v. Strain, 513 F.3d 492, 500–01
(5th Cir. 2008) (listing the “injury” allegation as the threshold consideration
before evaluating the force that caused the injury).  In his affidavit, Swain merely
asserted that Corporal Hutson “pushed me forcefully against the vehicle I had
been driving, searched my pockets, then threw me to the ground and handcuffed
me.”  See id. at 501 (finding that injury was properly alleged when
evidence showed not only that the police forcefully slammed the plaintiff into
a vehicle but also that the plaintiff sustained injuries to his face and jaw
resulting in medical expenses).

Because Swain has not shown that Corporal Hutson used excessive force, no
need for intervention arose, so Swain’s failure-to-intervene
claim against Officer DeWall also fails.  See Johnson
v. Bradford, 72 Fed. Appx. 98, 2003 WL 21697174, at *1 (5th Cir. 2003)
(citing Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995)).  Because
Swain failed to raise a fact issue regarding excessive force, we overrule this
portion of his second point pertaining to his claim against Corporal Hutson and
Officer DeWall in their personal capacities.  See Miranda, 133 S.W.3d at
228; Heard, 252 S.W.3d at 102.

ii. 
False Arrest

Swain
alleged in his petition that Corporal Hutson and Officer DeWall arrested him
for possession of drugs that they knew, or should have known, were not
“dangerous drugs.”  We interpret this as a Fourth Amendment claim asserting
lack of probable cause to arrest Swain for possession of dangerous drugs.

“Probable
cause exists when the totality of the facts and circumstances within a police
officer’s knowledge at the moment of arrest are sufficient for a reasonable
person to conclude that the suspect had committed or was committing an
offense.”  Mesa v. Prejean, 543 F.3d 264, 269 (5th Cir. 2008).  The
prima facie elements of the offense for which Corporal Hutson needed to have
probable cause are (1) the possession of a drug that (2) is classified as “dangerous.” 
See Tex. Health & Safety Code Ann. § 483.041(a) (West 2010); Ex
parte Charles, 582 S.W.2d 836, 837 (Tex. Crim. App. 1979) (holding that the
State must allege facts indicating why the drug is a dangerous drug when the
drug is not listed in the Dangerous Drug Act).  While the possession of
dangerous drugs offense does not apply to drugs obtained from either a
pharmacist or a practitioner, these exceptions are not prima facie elements of
the offense.  Tex. Health & Safety Code Ann. § 483.071 (West 2010)
(stating that the defendant has the burden to prove, and the State is not
required to negate, the exception, excuse, or exemption to prevail at trial); see
id. §§ 483.041(a), 483.042(a) (West 2010) (stating that both
exceptions require, in part, a valid prescription as well as a label, attached
directly to the bottle, that names the prescribing practitioner).  Thus, to
meet their burden in their plea to the jurisdiction, the police officers only
had to show that “the totality of the facts and circumstances within [Corporal
Hutson]’s knowledge at the moment of the arrest [we]re sufficient for a
reasonable person to conclude” that Swain (1) possessed a drug that (2) was classified
as dangerous.  See Mesa, 543 F.3d at 269 (defining probable cause); Miranda,
133 S.W.3d at 228 (stating that the standard for pleas to the jurisdiction
generally mirrors the traditional summary judgment standard); Havlen v.
McDougall, 22 S.W.3d 343, 345 (Tex. 2000) (stating that a party establishes
its right to summary judgment “by conclusively proving all elements of the
movant’s cause of action or defense as a matter of law”).

To
this end, Corporal Hutson stated in his affidavit that Swain pulled two blister
packs containing Protonix and Levitra out of his left pocket.  He also asserted
that he believed that these drugs were prescription pills “identified as
dangerous drug[s] using the Drug Identification Bible 2004/2005 Edition.”  In
response, Swain did not present evidence—that he possessed a valid prescription
and that the bottle displayed a label naming the prescribing practitioner—of an
exception to show that Corporal Hutson’s belief that Swain possessed dangerous
drugs was anything but reasonable.  See Tex. Health & Safety Code
Ann. §§ 483.041(a), 483.042(a), 483.071; Mesa, 543 F.3d at 269.  Indeed,
he admitted to Corporal Hutson at the scene that he did not have a prescription
for the drugs with him.  Because Corporal Hutson presented uncontroverted evidence
that Swain possessed drugs and uncontroverted evidence of why Corporal Hutson
believed that these were classified as dangerous drugs, Swain failed to raise a
fact issue regarding probable cause.  See Soto v. State, 810 S.W.2d 861,
864 (Tex. App.—Fort Worth 1991, pet. ref’d) (determining that probable cause
for the dangerous-drug-possession arrest existed when the drug’s label stated
that a prescription was required and the defendant could not show that either exception
applied).

Further,
because “the sum of the information known to the cooperating agencies or
officers at the time of an arrest or search by any of the officers involved is
to be considered in determining whether there was sufficient probable cause,” we
need not address whether Officer DeWall independently had probable cause.  See
Woodward v. State, 668 S.W.2d 337, 344 (Tex. Crim. App. 1982), cert.
denied, 469 U.S. 1181 (1985).  Therefore, we overrule this portion of
Swain’s second point pertaining to his claim against Corporal Hutson and
Officer DeWall in their personal capacities.  See Miranda, 133 S.W.3d at
228; Heard, 252 S.W.3d at 102.

iii. 
Malicious Prosecution

Swain
alleged in his petition that his arrest by Corporal Hutson and his continued
prosecution by unnamed City functionaries constituted malicious prosecution.  Because
malicious prosecution is not a valid claim under section 1983, we must dismiss
this claim unless we interpret Swain’s petition to allege a violation of a
federal constitutional right for which he presented evidence raising a fact
issue.  See Castellano, 352 F.3d at 942; Miranda, 133 S.W.3d at
228.  Within his malicious prosecution allegation, Swain asserted that Corporal
Hutson arrested him without probable cause, but as previously stated, Swain
failed to raise a fact issue regarding this claim.  See Mesa, 543 F.3d
at 269.  Therefore, we overrule this portion of Swain’s second point pertaining
to his claim against Corporal Hutson and the Does in their personal capacities.

iv. 
False Imprisonment and Denial of Due Process

Swain
alleged in his petition that Corporal Hutson and unnamed City functionaries prevented
Swain from making a phone call to arrange for his release, which led to his false
imprisonment for over six hours.  While Swain did not identify the resulting
constitutional violation, he alleged the same facts in his due process claim,
and so we interpret this as such.  See Baker v. McCollan, 443 U.S. 137,
142, 99 S. Ct. 2689, 2693–94 (1979) (interpreting the “[section] 1983 false
imprisonment action” for prolonged detention as a Fourteenth Amendment claim
for deprivation of liberty without due process).  However, an isolated
deprivation of the right to make a telephone call is a trivial injury and
is not sufficient to constitute a constitutional violation.  McCoy
v. Gordon, 709 F.2d 1060, 1063 (5th Cir. 1983), disapproved of on other
grounds by Augustine v. Doe, 740 F.2d 322 (5th Cir. 1984).  Therefore,
Swain failed to raise a fact issue on this portion of his due process claim
against Corporal Hutson and the Does in their personal capacities.  See
Miranda, 133 S.W.3d at 228; Heard, 252 S.W.3d at 102.  Accordingly,
we overrule this portion of Swain’s second point.

Swain
also alleged that Corporal Hutson and Officer DeWall violated his due process
rights by not reading him his Miranda rights before taking him to jail.  However,
the Fifth Amendment’s privilege against self-incrimination “can be violated
only at trial, even though pre-trial conduct by law enforcement
officials may ultimately impair that right.”  Murray v. Earle, 405 F.3d
278, 285 (5th Cir.), cert. denied, 546 U.S. 1033 (2005).  Because Swain
admits that the prosecution dropped the charge for which Swain was arrested, no
constitutional violation occurred, and Swain failed to raise a fact issue on
this portion of his due process claim against Corporal Hutson and Officer
DeWall in their personal capacities.  See id.; Miranda, 133
S.W.3d at 228; Heard, 252 S.W.3d at 102.  Accordingly, we overrule this
portion of Swain’s second point.

Additionally,
Swain alleged in his petition that Corporal Hutson and Officer DeWall violated
his due process rights by taking him directly into custody without taking him
before a magistrate.  Under the Fourth Amendment, a judicial officer must make
a prompt probable cause determination “as a prerequisite to extended restraint of
liberty following arrest.”  Gerstein v.
Pugh, 420 U.S. 103, 114, 125 n.26, 95 S. Ct. 854, 863, 869 n.26 (1975) (noting
that this “is required only for those suspects who suffer restraints on liberty
other than the condition that they appear for trial”).  Such determinations within
forty-eight hours of arrest generally comply with this promptness requirement. 
Cnty. of Riverside v. McLaughlin, 500 U.S. 44, 56, 111 S. Ct. 1661, 1670
(1991) (stating that determinations made within this time frame might still
violate the Fourth Amendment if the arrestee can show unreasonable delay).

Swain
stated in both his petition and his affidavit that he was released on bond
approximately six hours after police took him into custody, which was seven
hours after his arrest and well within the forty-eight-hour requirement. 
Further, the police submitted evidence that there were no conditions on Swain’s
release on bond.  In response, Swain did not allege or present evidence that
his probable cause determination was unreasonably delayed during the hours
before his release or that any restraints upon his liberty existed after his
release.  See id. at 44, 111 S. Ct. at 1670; Gerstein, 420 U.S.
at 114, 125 n.26, 95 S. Ct. at 863, 869 n.26.  Thus, Swain failed to raise a
fact issue on this portion of his due process claim against Corporal Hutson and
Officer DeWall in their personal capacities.  See Telles v. City of El Paso,
481 F. Supp. 2d 773, 779 (W.D. Tex. 2007) (affirming the finding of qualified
immunity because the arrestee was released on bail on the day of his arrest and
failed to show evidence of either an unreasonably delayed probable cause
determination or a continued restraint on his liberty).  Accordingly, we
overrule this portion of Swain’s second point.

Finally,
Swain alleged in his petition that Sergeant Henning, an unnamed police officer,
and unnamed clerks violated his constitutional rights by telling Swain to leave
the police station, refusing to return his possessions or give him information
about his case, and telling him to leave the clerk’s office when he tried to
pay his appeal bond.  However, on appeal, Swain provides no citations to
relevant authority to support his contention that the trial court erred by
dismissing these claims.  Therefore, Swain’s argument as to these claims is
inadequately briefed and is waived.  See Tex. R. App. P. 38.1(i); Fredonia
State Bank, 881 S.W.2d at 284.

Because
Swain failed to raise a fact issue on each of his due process allegations, we
overrule this portion of Swain’s claim against the police officers and the Does
in their personal capacities.  See Miranda, 133 S.W.3d at 228; Heard,
252 S.W.3d at 102.

v.  Ex
Post Facto Claim

Finally,
Swain alleged in his petition that unnamed City functionaries violated his
constitutional rights by instituting “ex post facto charges” when they
mailed him the citation for itinerant vending without a license.  The United
States Constitution prohibits states from passing an ex post facto law, which
is one that, in pertinent part, criminalizes and punishes an act that was done
before the passage of the law and that was innocent when done.  U.S. Const.
art. I, § 10, cl. 1; Collins v. Youngblood, 497 U.S. 37, 42, 110 S.
Ct. 2715, 2719 (1990).  In response to the other employees’ evidence that Swain
committed itinerant vending without a license on August 30, 2006, Swain did not
allege or present any evidence that the law was passed after that date, such
that it criminalized conduct that was innocent at the time of his arrest.  See
Collins, 497 U.S. at 42, 110 S. Ct. at 2719.  Instead, he merely claimed
that the citation was sent five months after the date of the incident and was
pretextual, which did not satisfy his burden to allege a constitutional
violation.  See United States v. Marion, 404 U.S. 307, 322, 92 S. Ct.
455, 464 (1971) (recognizing that the applicable statute of limitations is the
primary guarantee against bringing an overly stale criminal charge); Waltman,
535 F.3d at 346.  Because Swain failed to raise a fact issue regarding an ex
post facto violation, we overrule this final portion of his second point
pertaining to his claim against the Does in their personal capacities.  See
Miranda, 133 S.W.3d at 228; Heard, 252 S.W.3d at 102.

In
sum, because the City was entitled to governmental immunity against the
official-capacity claims and the other employees were entitled to qualified
immunity against the personal-capacity claims, we overrule Swain’s second point. 
See Waltman, 535 F.3d at 346; Miranda, 133 S.W.3d at 228.

IV. 
Findings of Fact and Conclusions of Law

In
his third point, Swain argues that the trial court erred by refusing to prepare
findings of fact and conclusions of law after it granted each motion to dismiss.

When
a judgment is rendered as a matter of law, findings and conclusions have no
purpose and should not be requested or considered on appeal.  IKB Indus.
(Nigeria) Ltd. v. Pro-Line Corp., 938 S.W.2d 440, 443 (Tex. 1997).  This is
especially true when a plea to the jurisdiction does not involve disputed
facts.  F-Star Socorro, L.P. v. El Paso Cent. Appraisal Dist., 324
S.W.3d 172, 175 (Tex. App.—El Paso 2010, no pet.) (“Absent a fact question, a
trial court’s decision granting or denying a plea to the jurisdiction is a
question of law . . . .”).  Therefore, even when the trial
court receives evidence, findings and conclusions are only appropriate if the
trial court is called upon to determine questions of fact upon conflicting
evidence.  Port Arthur Indep. Sch. Dist. v. Port Arthur Teachers Ass’n,
990 S.W.2d 955, 958 (Tex. App.—Beaumont 1999, pet. denied); see Haddix,
253 S.W.3d at 346 (deciding that, even though parties attached evidence to
their filings, findings and conclusions were not required because the evidence
was undisputed); Ford v. City of Lubbock, 76 S.W.3d 795, 796–98 (Tex. App.—Amarillo
2002, no pet.) (holding that, although evidence was attached to the plea and to
the response, findings and conclusions could not properly be considered on
appeal because no fact dispute existed).

We
determined above that Swain either failed to properly allege or failed to raise
a fact issue on the constitutional violations that he claimed the judicial
employees and other employees committed in their official and personal
capacities.  Thus, even though both sides submitted evidence, the trial court’s
dismissal of the claims against these employees did not involve disputed facts
but was decided as a matter of law.  See F-Star, 324 S.W.3d at 175; Haddix,
253 S.W.3d at 346; Ford, 76 S.W.3d at 796–98.  Accordingly, findings of
fact and conclusions of law were not appropriate, and the trial court did not
err by refusing to prepare them after granting these employees’ pleas to the
jurisdiction.  See Pro-Line, 938 S.W.2d at 443; Port Arthur,
990 S.W.2d at 958.  Therefore, we overrule Swain’s third point.

V. 
Conclusion

Having
overruled all of Swain’s points, we affirm the trial court’s judgment.

 

 

BOB MCCOY

JUSTICE

 

 

PANEL:  MCCOY,
MEIER and GABRIEL, JJ.

DELIVERED:  December 22,
2011









[1]See Tex. R. App. P. 47.4.





[2]Officer DeWall’s first
name is spelled “Dora” in the caption of this case and in portions of the
clerk’s record, but it is spelled “Dara” in her affidavit and in her amended
plea to the jurisdiction.





[3]Swain nonsuited the City
before the trial court ruled on the City’s motion, in an attempt to prevent the
application of section 101.106(e).  Swain I, 2009 WL 3246750, at *3. 
The trial court granted the nonsuit when it granted the City’s motion.  Id.





[4]The complaint alleged that
Swain had knowingly occupied a shoulder, improved shoulder, sidewalk, median,
or public right-of-way in a prohibited area, to-wit:  in the 2200 block of
North Collins Street, for the purpose of selling or offering for sale any product,
property, or service to the occupant of any vehicle, other than a lawfully
parked vehicle, “in violation of the Ordinance in said City Governing Streets.”





[5]The jury charge defined
“itinerant vending” as engaging in a temporary business in the City in person
or by an agent for the purpose of soliciting, selling, or taking orders for
merchandise or services.





[6]If a party provides no
argument to support its position, the appellate court may properly overrule the
issue as inadequately briefed.  Tex. R. App. P. 38.1(i); Fredonia State Bank
v. Gen. Am. Life Ins. Co., 881 S.W.2d 279, 284 (Tex. 1994)
(discussing “long-standing rule” that issue may be waived due to inadequate
briefing).  To the extent that Swain alleged in his petition a
personal-capacity claim against Williams, he waived this claim on appeal
because he neither argued nor cited any authority for the proposition that
Williams violated a law, federal or otherwise.  See Tex. R. App. P.
38.1(i); Clifton v. Walters, 308 S.W.3d 94, 99 (Tex. App.—Fort Worth
2010, pet. denied) (dismissing appellant’s contention because it was not
supported by argument, analysis, or citation to relevant authorities).





[7]Of the claims that Swain
asserted in his petition against the judicial employees, only the claim against
Williams referenced an official policy or custom, so we interpret this as the
only official-capacity claim.  See Graham, 473 U.S. at 166, 105 S. Ct.
at 3105.





[8]Of the claims that Swain
asserted in his petition against the other employees, only the malicious prosecution
claim referenced an official policy or custom, so we interpret this as the only
official-capacity claim.  See Graham, 473 U.S. at 166, 105 S. Ct. at
3105.





[9]If a party provides no
argument to support its position, the appellate court may properly overrule the
issue as inadequately briefed.  Tex. R. App. P. 38.1(i); Fredonia State Bank,
881 S.W.2d at 284.  On appeal, Swain references a false document but does
not argue fraud on the court, nor does he provide any citation to authority addressing
fraud on the court.  Therefore, this portion of Swain’s argument is
inadequately briefed and is waived.  See Tex. R. App. P. 38.1(i); Clifton,
308 S.W.3d at 99.